(No. 19768.—

W. E. JOHNSON *et al.* Plaintiffs in Error, *vs.* THE HOTEL LAWRENCE CORPORATION *et al.* Defendants in Error.

*Opinion filed December 20, 1929.*

SUMNER & LEWIS, for plaintiffs in error.

NOAH M. TOHILL, and GEE & GEE, for defendants in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

This was a bill in chancery filed on August 2, 1927, in the circuit court of Lawrence county, by sixteen stockholders of the Hotel Lawrence Corporation, representing a total of 87 shares of stock, to set aside a sale of all the assets of the Hotel Lawrence Corporation on June 29, 1927, to the Lawrenceville Hotel Company, as illegal and a fraud by the majority stockholders upon the minority stockholders of the Hotel Lawrence Corporation, praying the court to declare a forfeiture of a lease of the premises, and that the Hotel Lawrence Corporation be declared insolvent and the corporation dissolved, and that a receiver be appointed to take charge of the property and close up the affairs of the corporation. To this bill the defendants filed an answer on November 2, 1927, and on December 6, 1927, they filed an amendment to the answer, which set up a special meeting of the stockholders of the Hotel Lawrence Corporation held on October 22, 1927, which ratified and approved the sale and transfer of all the property and assets of the corporation which was attempted on June 29, 1927. After a hearing, the court on January 30, 1928, entered a decree dismissing the bill for want of equity, and this writ of error has been issued to review the record.

The bill charged that P. B. McCullough and H. H. Knipe, for the purpose of wrecking the Hotel Lawrence Corporation and depreciating the value of its property and appropriating it for their own use, suffered and committed waste and allowed the premises to become badly in need of repair and the furniture, fixtures and equipment to become broken and destroyed, with the fraudulent intent to gain possession of the property before their lease expired; that McCullough and Knipe, after they became the owners of the lease and after acquiring the control of a majority of the stock of the company, conspired and planned to destroy the holdings of the minority stockholders, and with that

fraudulent design caused a special meeting on June 28, 1927, to be called, at which meeting the resolution for the sale of the property was passed; that McCullough and Knipe and the members of their families voted 401 shares of stock for the passage of the resolution, and that the purchase of the property of the Hotel Lawrence Corporation by the majority of the stockholders at a sale authorized by themselves and at a price fixed by them was illegal, fraudulent and void, and that the interest of the majority stockholders lay wholly outside of and in opposition to the interest of the corporation and the minority stockholders and was a wanton and fraudulent destruction of the rights of the minority stockholders. The bill further charged that McCullough and Knipe failed to keep the premises in good and tenantable repair on the inside, failed to make additions and replacements to the equipment, failed to furnish sufficient heat to keep the fifth floor of the building reasonably warm and comfortable, were in arrears with the rent, and failed to provide proper elevator service and failed to secure the consent of the lessor to the assignment of the lease.

The Hotel Lawrence Corporation was organized October 3, 1919, by the public-spirited citizens of Lawrenceville, who subscribed for approximately 775 shares of the capital stock, of the par value of $100 per share, and to complete the construction and equipment of the hotel $75,000 of first mortgage bonds and $5500 of second mortgage bonds were issued and an additional $36,000 was borrowed. The hotel was leased to the Lawrenceville Hotel Company for a period of ten years from December 1, 1920, at a yearly rental of $6000 per year. The lease provided, among other things, that the lessee would not suffer or commit any waste on the premises, and agreed to keep the premises in good and tenantable repair on the inside and not assign the lease or under-let the premises without previous consent in writing, and that the lessee would furnish sufficient heat to the fifth floor of the building to keep the same reasonably warm

and comfortable for the occupants thereof, and furnish reasonable and prompt elevator service for the occupants of the fifth floor as well as to the officers, employees and other persons having business with such occupants. The lease further provided that if the rent, or any part thereof, should at any time be in arrears or unpaid, or if the lessee should at any time fail or neglect to perform or observe any of the covenants, conditions or agreements, it should be lawful for the lessor, or any person duly authorized, without formal notice or demand, to enter upon said premises and to hold peaceable possession thereof.

The Lawrenceville Hotel Company was first incorporated by E. G. Brennan and Frank T. Read, and when they disposed of their interest in the lease Cal Butterfield acquired the same. After a period of operation of the hotel by Butterfield the same was acquired by the defendant P. B. McCullough and Ham Mills and William Thorn, who operated it until the defendant H. H. Knipe purchased the interest of Mills and Thorn in January or February of 1927. McCullough and Knipe were the owners of the lease and operators of the hotel at the time the property of the Hotel Lawrence Corporation was sold to the Lawrenceville Hotel Company. There was no consent in writing by the Hotel Lawrence Corporation for the assignment of any of these transfers. The only income of the Hotel Lawrence Corporation was derived from rental, which was not sufficient to pay the interest on its indebtedness and retire the bonds as they became due, and for a long time before the filing of the bill the corporation was, as admitted by complainants in their brief, insolvent and unable to pay its debts. After McCullough and Knipe became interested in the lease of the hotel they began to purchase and acquire the common stock of the Hotel Lawrence Corporation at ten per cent of its par value, and also acquired the past-due bonds of the corporation, which they held without any attempt to force payment, and at the time of the hearing they held

$25,000 worth of past-due bonds. On June 23, 1927, the Lawrenceville Hotel Company, a new corporation, (the old Lawrenceville Hotel Company having been dissolved,) was organized by McCullough and Knipe, 149 shares being owned by McCullough, 149 shares by Knipe, one share by Mary C. McCullough, a daughter of P. B. McCullough, and one share by J. L. Knipe, a son of H. H. Knipe. The authorized issue of capital stock was $200,000, but only $30,000 worth was issued, and this company was the purchaser of the property of the Hotel Lawrence Corporation.

It is claimed by complainants that the lease under which the hotel was operated having contained a provision that the same should not be assigned without the written consent of the lessor, upon its assignment by the Lawrenceville Hotel Company without such written consent it became void. That question is not material here. A clause in a lease that the same shall not be assigned without the written consent of the lessor is for the benefit of the lessor, only. It does not render the assignment, when otherwise made, absolutely void but voidable only, at the option of the lessor or his representative. The receipt of rent from an assignee or purchaser of the lessee will constitute a waiver of such right of forfeiture and will preclude the lessor from insisting upon a forfeiture on the ground the assignment was made without his written consent, as provided in the lease. *Vintaloro* v. *Pappas,* 310 Ill. 115; *Johnson* v. *Northern Trust Co.* 265 id. 263; *Webster* v. *Nichols,* 104 id. 160.

It is urged by complainants that the persons operating the hotel committed waste and that they failed to furnish sufficient heat to keep the fifth floor of the building reasonably warm and comfortable. They also complained of the elevator service, the dining-room service and lack of dishes. The operators of the hotel were operating it under a time lease and paying an annual rental. Whether or not they heated the fifth floor, furnished elevator service, prompt

dining-room service and had the proper amount of dishes would not in any way tend to decrease the value of the building which they had rented but were matters which would result in detriment to the operators.

Complaint is made that the operators of the hotel allowed the building to become run down and badly in need of paint. The undisputed evidence shows that after January, 1923, every room in the hotel was re-painted. That no great amount of waste was committed by the operators of the hotel is evidenced by the fact that the lease was never forfeited by the lessor.

Complainants contend that McCullough and Knipe conspired together to fraudulently obtain the property. There is no direct evidence to this effect. McCullough and Knipe were lessees of the property, and there was nothing in that relationship which would preclude them from purchasing any or all of the stock of the landlord corporation. While they were both stockholders in the landlord corporation neither of them was an officer or director of such corporation at the time of the meeting of the stockholders of the corporation June 28, 1927, at which the resolution was passed authorizing the sale. While they purchased the majority of the stock of the landlord corporation there is no evidence tending to show that they did not buy it fairly in the open market or that they made any misrepresentations of any sort to any person for the purpose of procuring such stock. They paid $10 a share for all the stock which they purchased, except that they paid $400 for twenty shares of stock to one person in order to acquire from him $11,000 of past-due bonds upon which foreclosure was threatened. None of the persons from whom they purchased the stock made any complaint with reference to such sales or that they did not receive all that the stock was fairly worth. At the time that the resolution of sale was passed by the stockholders on June 28, 1927, the corporation was admittedly insolvent.

Its only source of income was the rental, which was entirely inadequate to meet the accrued interest on the bonds. A large portion of the bonds was past due. The hotel building was out of proportion to the size and needs of the city. The outlook for the lessor corporation was hopeless. While there is a conflict in the evidence as to the value of the building, no one other than the lessees has ever made any offer of purchase, nor is there any evidence tending to show that if the sale were set aside a higher price could be obtained. The contract of purchase provided for the payment of all the debts of the corporation and payment to each one of the stockholders of an amount equal to that for which the majority of the stockholders had voluntarily sold their stock. The chancellor saw and heard the witnesses, and, while there are no findings of fact in the decree, it is evident that he did not find any fraud on the part of the purchasers.

It is urged by complainants that the resolution for the sale of the property on June 28, 1927, was not passed by the required two-thirds majority, because there were 376 shares voted which had not been transferred on the books ten days before the meeting, as required by the statutes of the State of Illinois and the by-laws of the company. It is conceded by defendants that these shares of stock had not been transferred on the books of the company ten days before the meeting of June 28, 1927, for the reason that the officer having charge of the books was absent from the State so that they could not be transferred. When this question was called to the attention of defendants a special meeting of the stockholders was held October 22, 1927, for the purpose of considering the approval and ratification of the sale of all the property, real and personal, and assets of the Hotel Lawrence Corporation on June 29, 1927. Notice of this meeting was sent to every stockholder of the corporation. At that time there were 779 shares of stock outstanding. At this meeting 279 shares were rep-

resented by stockholders present in person and participating in the meeting and 280 shares were represented by proxy. At this meeting, by a vote of 534 in favor of it and 43 votes against, the following resolution was adopted:

"Whereas, at a special meeting of the stockholders of the Hotel Lawrence Corporation held on the 28th day of June, 1927, a resolution was adopted by the said stockholders authorizing and directing the president and secretary of the corporation to sell all of the corporate property and assets of the corporation to the Lawrenceville Hotel Company, a corporation, at and for the consideration or price a sum equal to all of the outstanding indebtedness of the corporation, including bonds, notes, accounts, bills payable and of whatever kind or nature, and the further consideration and sum of ten per cent of the par value of all of the common stock of the corporation issued and outstanding; and

"Whereas, the president and secretary of this corporation, in pursuance of said resolution, did on the 29th day of June, 1927, sell and convey to the Lawrenceville Hotel Company all of the corporate property and assets of the Hotel Lawrence Corporation, and did then make, execute and deliver to the Lawrenceville Hotel Company deeds and other indentures of conveyance necessary and requisite to convey title to all of said property, and that in pursuance of said sale and transfer the Lawrenceville Hotel Company did at once take and enter into possession of all of said property as the absolute owner thereof, and that all and everything necessary and required to complete said sale and transfer has been done agreeable to said resolution;

"*Therefore be it resolved*, that the stockholders of the Hotel Lawrence Corporation do hereby ratify and confirm said sale and transfer of all of its corporate property and assets to the Lawrenceville Hotel Company, and that the acts and doings of the president and secretary of this corporation in the making of said sale and the transfer of said property, including the making, execution and delivery of deeds of conveyance and assignment, be and they are all hereby ratified, approved and confirmed."

Under the general Corporation act in force on June 28, 1927, any corporation organized under the act had the right to sell all of its corporate assets with the consent of the owners of two-thirds of all outstanding capital stock of the corporation at any annual meeting or any special meeting called for that purpose. Even though it be conceded that

the action of the stockholders at the meeting of June 28, 1927, was open to question because of the voting of stock which had not been transferred on the books of the corporation ten days prior to that meeting, yet the action at that meeting was not void but only voidable, and its subsequent ratification at the special meeting held for that purpose, as to which no such question is raised, rendered the action of the officers in following the directions of the resolution of the stockholders at the meeting of June 28, 1927, valid. There was no secrecy about the proposal to sell the assets of the corporation. Every stockholder had notice thereof. The matter was fully explained to the stockholders and there is no question but that the situation was truthfully placed before them. The price for which the assets were sold, as shown by the evidence, was a fair one under the circumstances. No stockholder had any other plan to propose to prevent the foreclosure of the mortgage.

The circuit court was fully justified by the evidence in entering its decree, and the decree will be affirmed.

*Decree affirmed.*