Benjamin B. Morris, Appellant, v. Interstate Iron & Steel Company et al., Appellees.

Gen. No. 34,050.

614

Opinion filed May 29, 1930.

LITSINGER, HEALY & REID, for appellant.

HOMER E. BLACK, EDWARD R. JOHNSTON and JAMES W. HYDE, for appellees; EDWARD R. JOHNSTON, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Benjamin B. Morris, complainant, filed his bill for an injunction against Interstate Iron & Steel Company, a corporation, Central Alloy Steel Corporation, a corporation, et al., defendants. The chancellor sustained a general demurrer to the bill. Complainant electing to stand by the bill it was dismissed for want of equity. This appeal followed.

The bill alleges that complainant is a stockholder of the Interstate Iron & Steel Company, a corporation, organized under the laws of Illinois; that its capital stock is composed of 600,000 shares of common stock of no par value, of which 250,000 shares are outstanding, and of approximately 20,000 shares of preferred stock of the par value of $100 each; that the object for which it was organized was to manufacture, buy, sell, and otherwise deal or traffic in iron, steel, etc.; that it operated a plant at East Chicago, Indiana, and two plants in Chicago, Illinois, and that all of its property and assets are of the value of $17,000,000; that about October 2, 1929, it entered into a written agreement with Central Alloy Steel Corporation, a corpora-

tion organized under the laws of New York, which agreement provided for the conveyance and transfer of the entire property, assets and business of the Illinois corporation to the New York corporation, and for the assumption by the latter corporation of all the debts and obligations of the Illinois corporation and for the delivery to the Illinois corporation or its nominees of 318,750 shares of no par value stock of the New York corporation, to be distributed to the common stockholders of the Illinois corporation in the proportion of 1.275 shares of stock of the New York corporation for each share of the 250,000 shares of the common stock of the Illinois corporation; ''that the contract or agreement between the Interstate Iron & Steel Company and the Central Alloy Steel Corporation was on October 16, 1929, submitted to a Special Meeting of the stockholders of the Interstate Iron & Steel Company and declared by the officers of said corporation to have been approved by the requisite vote of said stockholders;'' ''that the said officers and directors of the said Interstate Iron & Steel Company have indicated their intention to and are proceeding to make a conveyance and transfer of the entire property, assets and business of the said Interstate Iron & Steel Company to the said Central Alloy Steel Corporation, in accordance with the provisions of said contract above mentioned;'' ''that the said Central Alloy Steel Corporation is not incorporated under the laws of the State of Illinois,'' and ''that the said agreement for the transfer of the entire property, assets and business of the said Interstate Iron & Steel Company to the said Central Alloy Steel Corporation for shares of stock in said Central Alloy Steel Corporation was in effect an agreement for a merger and consolidation of the said Interstate Iron & Steel Company, a domestic corporation, with said Central Alloy Steel Corporation, a foreign corporation, for which said merger and consolidation there is no statutory authority, but that such

merger and consolidation between a domestic and a foreign corporation is against public policy, without statutory authority and invalid, and in contravention to the rights and interests of your orator as a stockholder in said Interstate Iron & Steel Corporation.'' The bill prays that the agreement between the Illinois corporation and the New York corporation be declared invalid and that it be cancelled and declared null and void and that all of the defendants may be enjoined from carrying out the provisions of the agreement and from conveying and transferring the property, assets and business of the Illinois corporation to the New York corporation.

Complainant contends that ''the proposed transfer and conveyance of all the property, assets and business was not a sale but was a merger or consolidation,'' and that ''there is no statutory authority in Illinois for the merger or consolidation of a domestic corporation with a foreign corporation and the proposed transaction is against the law of Illinois and invalid.'' Defendants contend that ''an Illinois corporation has express statutory power to sell all of its property and assets with the consent of two-thirds of its stockholders;'' that ''the allegations of the bill of complaint make it clear that the agreement between the Interstate Iron & Steel Company and the Central Alloy Steel Corporation was not an agreement for consolidation or merger,'' and that ''the allegations of the bill of complaint are entirely consistent with a contract for the sale of the entire corporate assets of the Interstate to the Central Alloy.''

The contentions of complainant that a corporation has no power to consolidate with another corporation unless the power is expressly conferred, and that there is no statutory authority in Illinois for the merger or consolidation of a domestic corporation with a foreign corporation, are sound and not disputed. (See *Am. L. & T. Co. v. M. & N. R. R. Co.*, 157 Ill. 641; *Loughlin*

*v. U. S. School F. Co.,* 118 Ill. App. 36.) The contention of defendants that an Illinois corporation has express statutory power to sell all of its corporate assets with the consent of the owners of two-thirds of all outstanding capital stock of the corporation at any annual meeting or at any special meeting called for that purpose, is also sound. (See subparagraph (9) of Sec. 6 of the General Corporation Act; also *Johnson v. The Hotel Lawrence Corp.,* 337 Ill. 345, 352.)

The sole question to determine is, Was the agreement, in effect, one for a merger or consolidation of the Illinois corporation with the New York corporation? If it was, the demurrer should have been overruled. If it was not, the action of the chancellor in sustaining the demurrer and in dismissing the bill was a proper one.

In support of his contention that the agreement was one for a merger or consolidation, the complainant relies upon the case of *Chicago, Santa Fe & C. Ry. Co. v. Ashling,* 160 Ill. 373. This case involved a transaction between two railroad companies under the provisions of "An Act to Increase the Powers of Railroad Corporations," approved June 30, 1885, which provides (*inter alia*) for consolidation of railroad companies by a transfer from one railroad corporation to the other of all of the vendor's property and assets and *its corporate rights and franchises.* In that case there was involved the question as to whether or not the consolidated railroad corporation was estopped, when sued upon a judgment obtained against one of the constituent companies, to assert that the proceedings for consolidation were not in accordance with the terms of the consolidation statute, and that "the transaction was not a consolidation, but only a purchase by and sale to it of all the property, rights and franchises of the St. Louis company," under the Act of June 30, 1885. The court held that the consolidated railroad corporation was estopped from so asserting, and they further held that the transaction in question was a

consolidation of the St. Louis company with the Santa Fe company for the reason that "by the transaction the St. Louis company was left without property, corporate rights or franchises of any kind, and without stockholders. All of these were transferred bodily to the Santa Fe company, and became united, respectively, with the property, rights, franchises and stockholders of the latter company." One of the effects of the transaction, as was pointed out in the opinion, was to incorporate in the Santa Fe company the stockholders of the St. Louis company, thus "combining all of the stockholders of each company in one." The distinction between the *Ashling* case and one akin to that presented in the present bill is clearly pointed out by Mr. Justice Ball in *Hiles v. C. A. Hiles & Co.*, 120 Ill. App. 617.

"A true consolidation, which exists where a new corporation springs into existence to assume the liabilities of the former corporations and the prior corporations are dissolved and cease to exist, should be distinguished from a merger which exists where one corporation is continued and the others are merged in it without the formation of a new corporation." (14a C. J. 1054.)

"In ordinary legal phraseology, the term 'consolidation' is generally used to indicate the act and result of uniting two or more corporations into one under a new name. A 'merger' takes place where one of the constituent corporations remains in existence absorbing or merging in itself all the other companies. In a merger of two or more companies, one of the merging corporations continues to survive and succeeds to the franchise and acquires the property and assets of the other constituent corporations." (*Collinsville Nat. Bank v. Esau,* 74 Okla. 45, 176 Pac. 514, 516.)

The effect of consolidation "is the dissolution of the constituent companies. They cease to exist as legal entities. A new corporation comes into existence hav-

ing all the property, rights, powers and franchises, and subject to all the duties and obligations, of both the constituent companies. (*Ohio and Mississippi Railway Co. v. People,* 123 Ill. 467; *People v. Louisville and Nashville Railroad Co.,* 120 id. 48.)" (*Scheidel Coil Co. v. Rose,* 242 Ill. 484, 487. See also *Chicago Title & Trust Co. v. Doyle,* 259 Ill. 489.) In this last case the court also refers to the *Ashling* case and points out that the ruling in that case that the transaction was a consolidation and not a purchase was based upon the fact "that the St. Louis company was left without property, corporate rights, franchises or stockholders."

The only statutory provisions by which two industrial companies can merge or consolidate in this state are found in the Corporation Act, Sections 65 to 72, inclusive, Cahill's Ill. Rev. St. (1929) p. 677. While this act permits only domestic corporations to merge or consolidate, nevertheless, we may determine from its provisions what constitutes a merger or consolidation under our law. Section 65 provides that two or more corporations *organized under the law of this state* may "merge or consolidate into a single corporation," and further provides as to the name that the corporation formed by the merger or consolidation may take. Section 69 provides that when the merger or consolidation has been effected "the merged or consolidated corporations shall be a single corporation." Section 70 provides that "such single corporation" shall thereupon and thereafter possess all the rights, powers and franchises, as well as the property, real, personal, and mixed, belonging to each of the corporations, and all of the property, rights, privileges, immunities, powers and franchises shall be as effectually the property "of the single corporation" as they were of the several and respective merging or consolidating corporations. A merger or consolidation under our

statute is a merger of corporate entities, and after all the necessary steps have been taken there is but one entity, which possesses "all the rights, powers and franchises, as well as all of the property, real and personal," of the constituent corporations. Under this act, when a certificate of merger or consolidation is issued it has the effect of vesting in the consolidated corporation all of the property, rights, privileges, immunities, powers and franchises of the constituent corporations. The change in title is effected by operation of law and no conveyance is necessary. In *Southern Ill. Gas Co. v. Commerce Com.*, 311 Ill. 299, it was held that the consolidation of two or more corporations, under the act, dissolved the original corporations and created a new one. The court further said:

"A consolidation is not a purchase but is referred to in the statute as a merger. It has, perhaps, some of the qualities of a purchase, but it is a union of the rights and obligations of the original corporations which go out of existence and for which the single new corporation is substituted."

The contract alleged in the present bill is not one by which two corporations agree to go out of existence and permit a new corporation to succeed to their corporate rights and franchises, nor is it one where one corporation is continued and the other merged, but it is a sale by one corporation of its property and assets to another, both corporations continuing to exist. The Illinois corporation did not agree to transfer its corporate franchise to the New York corporation, nor could it sell its franchise. (See *People v. Union Gas Co.*, 254 Ill. 395, 404.) Nor was the Illinois corporation dissolved by the sale of all of its property. (*Reichwald v. Commercial Hotel Co.*, 106 Ill. 439, 451–2; *People v. Union Gas Co., supra.*) In the instant case certain stock of the New York corporation was to be delivered to the Illinois corporation, and when the delivery was

effected, the latter corporation would then have assets, its common and preferred stockholders and its franchise.

Section 6 of the Corporation Act defines the "powers, rights and privileges generally" of corporations organized under the act. Subparagraph (9) of this section reads as follows: "(9) To lease, exchange or sell all of the corporate assets with the consent of two-thirds of all the outstanding capital stock of the corporation at any annual meeting or at any special meeting called for that purpose." In *Johnson v. Hotel Lawrence Corp., supra,* where the court was called upon to pass upon a sale arising under subparagraph (9), it said (p. 352):

"Under the general Corporation act in force on June 28, 1927, any corporation organized under the act had the right to sell all of its corporate assets with the consent of the owners of two-thirds of all outstanding capital stock of the corporation at any annual meeting or any special meeting called for that purpose."

There is nothing in the language of the statute that prohibits the Illinois corporation from selling its property and assets to a corporation organized under the laws of a sister state. In our judgment it is clear that the contention of the complainant that the agreement was one for consolidation and merger is without merit and we are unable to see why it is not one for the sale of the entire corporate assets of the Illinois corporation to the New York corporation. The usual incidents of a sale of the corporate assets by one corporation to another are present in the agreement and as such a sale is authorized by the statute we think the chancellor was justified in sustaining the general demurrer and dismissing the bill.

The decree of the Circuit Court of Cook County is affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.