(No. 4135

GREAT AMERICAN INSURANCE COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 23, 1949.*

*Petition of Claimant for rehearing denied February 14, 1950.*

BARBER & BARBER, BY MR. HENRY R. BARBER, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

The facts disclose that Great American Insurance Company owned 100% of the stock of the County Fire Insurance Company of Philadelphia, a Pennsylvania Corporation, except 20 director qualifying shares on which said company had the option to purchase.

Both of said companies had for many years done an insurance business in Illinois and had paid an annual privilege tax.

That said companies had an agreement dated July 1, 1947, which provided that all business of the County Fire Insurance Company was the business of the Great American Insurance Company, and that Great American received all of the premiums and were liable for all risks the same as if such policies had been issued in the name of the Great American .(Exhibit B).

That on April 8th, 1948 a reinsurance agreement was entered into by the parties and it is noted no cash consideration appears in said contract for transfer of said property. It is apparent the agreement was to be effective upon the dissolution of the County Fire Insurance Company.

That on April 14, 1948, a petition for voluntary dissolution was filed in the Court of Common Pleas No. 3 for the County of Philadelphia, Commonwealth of Pennsylvania, and on April 26th, 1948 a decree of dissolution was entered, but not to be effective until the Auditor General, State Treasurer and Attorney General had filed

certificates showing all taxes due to the Commonwealth of Pennsylvania had been paid and a certified copy of the decree filed and recorded in the office of the Secretary of the Commonwealth; that Exhibit 6 shows all of the requirements of said decree were met on June 1, 1948 and on August 9, 1948 a decree was entered approving the transfer of the assets of the County Fire to the Great American.

That the Director of Insurance of Illinois pursuant to a report of gross premiums received by the County Fire Insurance Company for the year ending December 31, 1947, made an assessment of privilege tax against said County Fire Insurance Company in the amount of $4,289.29 for the privilege of doing business for the year commencing July 1, 1948; that said Director about May 1st, 1948 rendered to said County Fire Insurance Company a statement of said assessment and on or about May 17th said company paid to the State of Illinois said tax.

Exhibit No. 3 dated May 15, 1948 is the assessment of the privilege taken and is shown addressed to the County Fire Insurance Company and received by Great American Insurance Company, this exhibit showing tax due July 1, 1948 and objections to be filed, if any, by June 21st, 1948 at 9:00 A.M.

Exhibit 8 shows County Fire Insurance Company notified the Director of Insurance of Illinois on April 20, 1948, among other things, the following:

"This Company has filed a Petition for Voluntary Dissolution in the Court of Common Pleas for the County of Philadelphia, Commonwealth of Pennsylvania. The Great American Insurance Company of New York owns all of the Capital Stock of this Company and the Boards of Directors of both companies have voted to liquidate the County Fire Insurance Company. The purpose of this transaction is to simplify the corporate structure of the Great American Group."

"According to our records there will be due the State of Illinois,

taxes on premiums written during 1947 which we will be glad to pay before the dissolution if necessary. These taxes, pursuant to the re-insurance agreement, will become liabilities of the Great American *in addition to the tax which will accrue on premiums written in 1948 up to the date of complete liquidation.*"

Exhibit 9 shows a letter to the County Fire Insurance Company from J. Thor Wanless, Deputy Insurance Director, dated April 30, 1948, and showed received by Great American Insurance Company, and that upon receipt of a statement from a responsible officer of Great American that taxes on 1947 and 1948 business of County would be paid by Great American, the certificate of authority would be cancelled and a statement of taxes due was sent.

That the privilege tax paid by County Fire to the Director of Insurance was immediately turned over to the State Treasurer.

Claimant contends that the privilege tax paid by County Fire for the year commencing July 1, 1948 never became due and payable and said amount is recoverable under the provisions of Sec. 412 (4) of the Illinois Insurance Code.

A great deal of time has been spent on the question of whether the tax was paid voluntarily, or under protest. The cases cited and argued are in the main devoted to situations where a tax is paid voluntarily and no statutory provisions exist for repayment. In such cases the courts have denied relief.

However, in cases where statutes contemplate a refund or other provisions are set up for credits, where tax overpayments have been established, the courts have held that it did not make any difference whether payments were made voluntarily and without protest, and whether the mistake was one of fact or of law. These cases, however, are construed in accordance with the

particular statutory provision. In the cases allowing refunds appropriations had been set up by the departments to cover such situations.

In the instant case there is no evidence of any appropriation available in the Department of Insurance, and, if there was, petitioner would have an adequate remedy at law and this Court would have no jurisdiction.

In the case of *Adams* vs. *Nudelman,* 375 Ill. 217 at page 219, it is held:

"No case from this court is cited, and we apprehend that none can be, where the State Treasurer and State Auditor have been compelled to pay money out of the treasury without any appropriation therefor, and it is admitted there is no appropriation applicable to this case.

No matter by what name this suit may be called it is, in substance and in necessary effect, a suit against the State and section 26 of article 4 of the constitution provides that the State of Illinois, shall never be made defendant in any court of law or equity.

The constitution also provides in section 7 of article 9 that all taxes levied for State purposes shall be paid into the State treasury. This last provision is implemented by the State Government act (Ill. Rev. Stat. 1939, chap. 127, par. 171) which requires every board, commission or department collecting money on behalf of the State to pay the same into the State treasury not later than the next day after collection, disregarding holidays and Sundays. The next section following that above mentioned provides a means whereby a taxpayer may, by notice to the State Treasurer, make payments under protest, in which event the money shall be kept in a protest fund for a period of thirty days during which an injunction or restraining order may be sought for testing the validity of the tax, and providing that such fund shall be held until the final order of the court. Plaintiffs did not comply with this statute, did not make payment under protest and admit that the moneys they paid have long since been paid to the State Treasurer."

There is no dispute that the tax in this case was voluntarily made. The petitioner, or the County Fire Insurance Company, had a remedy under Chapter 127, Paragraph 172, Illinois Revised Statutes (State Bar Edition) (*Adams* v. *Nudelman,* supra; *Farm Bureau Oil Co. Inc.* vs. *State of Illinois,* 14 Court of Claims Reports, 153 at 155.)

Under the decisions of our courts the money having been paid into the State Treasury, and no appropriation being applicable for the refund in this case, the claim will have to be denied. (*Adams* v. *Nudelman*, supra.)

We have carefully considered the decisions cited by claimant, and find that said cases are not in point.

Another reason why the claim will have to be denied is that in effect the County Fire Insurance Company became merged with the Great American Insurance Company, and under Section 409, sub-paragraph (3) of the Insurance Code, the tax is deemed paid by said Great American Insurance Company. Claimant contends contract between County Fire and claimant evidenced a sale and did not operate to effect a merger or consolidation.

The reinsurance agreement contemplated a dissolution of the County Fire, and was definitely predicated thereon. Exhibit 8 showed the purpose of liquidating the County Fire was to simplify the corporate structure of the Great American. The reinsurance agreement itself showed that as of July 1, 1947 all policies issued by County Fire were in effect policies of the Great American and Great American received all of the premiums.

Great American, it is admitted, owned and controlled all of the stock of the County Fire. By whatever technical construction you view the transaction it was simply an absorption by the Great American of something it already owned and controlled and to thereafter operate the two enterprises as one.

In *Gunggall* v. *Outer Drive Athletic Club*, 349 Ill. 406, the court on page 413, said:

"A consolidation of corporations has been defined to be a merger, a union or an amalgamation by which the stock of the two corporations is made one, by which their property and franchises are combined into one, by which their powers become the powers of one, by which their names are merged into one, and by which the identity of two prac--

tically, if not actually, runs into one. This was the definition formulated by the Supreme Court of Montana after an exhaustive examination of a great many adjudicated cases and text books and a consideration of a large number of constitutional and statutory provisions of the different States, in *State* vs. *Montana Railway Co.*, 21 Mont. 221."

On pages 414 and 415 of the same opinion, the court quoted from the case of *Chicago, Santa Fe & California Ry. Co.* v. *Ashling*, 160 Ill. 373, as follows:

"It was said that "it is true that what was done must be considered in order to determine whether there was a consolidation or not, but we must look to the results accomplished, rather than to the means, steps or procedure by which those results have been attained." The fact was then referred to as going far toward stamping the transaction as one of consolidation, that in addition to the consideration of one dollar to be paid by the Santa Fe company and the assumption and payment of the bonded indebtedness of the St. Louis company, the Santa Fe company was to issue its stock to the stockholders of the Santa Fe company, dollar for dollar, in exchange for its stock in the latter company. The effect of this was to incorporate in the Santa Fe company the stockholders of the St. Louis company, combining all the stockholders of each company in one. "This," the court said, "was an act of consolidation and not by any means necessary to a mere purchase and sale. * * * * By the transaction the St. Louis company was left without property, corporate rights or franchises of any kind, and without stockholders. All of these were transferred bodily to the Santa Fe company, and became united, respectively, with the property, rights, franchises and stockholders of the latter company. Why was this not a consolidation of the St. Louis company with the Santa Fe company? There is no magic in words. Merely calling the transaction a purchase and sale would not prevent it from being a consolidation. It cannot be supposed from the nature of this transaction that it was expected that the St. Louis company should continue its active corporate existence after divesting itself of all its property, corporate rights and franchises and stockholders."

In the case cited by claimant, *Morris* v. *Interstate Iron & Steel Co.*, 257 Ill. App. 613, at page 620, the court said:

"The contract alleged in the present bill is not one by which two corporations agree to go out of existence and permit a new corporation to succeed to their corporate rights and franchises, nor is it one where one corporation is continued and the other merged, but it is a sale by one corporation of its property and assets to another, both corporations continuing to exist. The Illinois corporation did not agree to transfer its corporate franchise to the New York corporation, nor could it sell

its franchise. (See *People* vs. *Union Gas Co.*, 254 Ill. 395, 404.) Nor was the Illinois corporation dissolved by the sale of all of its property."

There is no law submitted as to legal requisites of merger with reference to Pennsylvania or New York.

Fletcher on Corporations, Vol. 15, Sec. 7041, provides:

"Strictly speaking a merger means the absorption of one corporation by another, which retains its name and corporate identity with the added capital franchises and powers of the merged corporation. It is the uniting of two or more corporations by the transfer of property to one of them, which continues in existence, the other being merged therein."

"Sec. 7046: * * * * there is no merger or consolidation merely because the stockholders of two corporations are largely or wholly the same, * * * *. Such stock ownership and control may, however, when taken in connection with other circumstances force the conclusion that there has been a merger of the companies, and the legal fiction of distinct corporate existence will be disregarded in a case where a corporation is so organized and controlled, and its affairs are so conducted, *as to make it merely an instrumentality or adjunct of another corporation.*"

The words of the reinsurance agreement and the true intent and purpose of the contracting parties determines whether or not a merger was contemplated. (*C. & E. I. R. R. Co.* vs. *Doyle*, 256 Ill. 517.)

The stipulation of facts does not set forth the petition to dissolve the County Fire, nor the complete proceedings relating thereto.

The reinsurance agreement, as stated, required the County Fire to be dissolved and upon its dissolution agreement of July 1, 1947 was to be cancelled; the final decree of court approved the transfer of the assets to Great American; all of these requirements would not be necessary to an ordinary sale of assets and definitely showed an intention to merge the County Fire into the Great American.

For the reasons above set forth the claim will be denied.

(No. 4135—Claim denied.)

GREAT AMERICAN INSURANCE COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

CONCURRING OPINION OF JUDGE LANSDEN:

I agree with the result of the case, but I am unable to concur in those portions of the opinion which intimate that this Court is without jurisdiction or power to make an award if claimant was otherwise entitled thereto.