COKEN COMPANY, INC. *vs.* DEPARTMENT OF PUBLIC WORKS
& another.[1]

Suffolk.  December 18, 1979. — April 16, 1980.

Present: BROWN, GREANEY, & PERRETTA, JJ.

*Public Works.  Contract,* Public works, Bidding for contract.  *Corpora-
tion,* Change of name.  *Practice, Civil,* Findings by judge.

The Department of Public Works was not entitled to rescind a contract
with a corporation which had prequalified and was eligible to bid on
the project pursuant to G. L. c. 29, § 8B, merely because the corpora-
tion had undergone a change in name subsequent to the prequalifica-
tion but prior to the department's award of a contract to it. [589-592]
The Department of Public Works was not entitled to rescind a contract
with a corporation which had prequalified and was eligible to bid on
the project pursuant to G. L. c. 29, § 8B, on the basis that the cor-
poration had failed to comply with a department rule requiring the
corporation to report any change in the corporate name after the time
of filing its § 8B statement. [592-593]

BILL IN EQUITY filed in the Superior Court on June 26,
1973.

The suit was heard by *Tempone,* J., a District Court
judge sitting under statutory authority.

*Edward J. Quinlan,* Assistant Attorney General, for the
defendants.

*Roger J. Brunelle* for the plaintiff.

PERRETTA, J.  The plaintiff (Coken) seeks damages for
breach of a contract which it had executed with the defend-
ant (the DPW) for the installation of a computerized traffic
control system in Malden.  The DPW rescinded the contract
shortly after Coken had begun performance of it because
the contract was executed by Wendell Corporation (Wend-

---

[1] The Commissioner of the Department of Public Works.

ell) of Rhode Island, the name used by the corporate entity immediately before it adopted its current title. Invoking several statutory and regulatory provisions (see G. L. c. 29, § 8B as amended by St. 1967, c. 54), the DPW claimed Wendell ceased to exist as of the date of the name change, and, consequently, the contract executed later was a "nullity." Coken alleged that the rescission was in bad faith and that the DPW breached a valid contract. After a jury waived trial, the judge entered a judgment in Coken's favor, and the DPW appeals. We agree that the DPW breached its contract.

The parties do not dispute the events leading up to the DPW's rescission of the contract; rather, they argue the legal consequences of those occurrences. Wendell was located on Wendell Street in Providence, Rhode Island. The corporation was formed under the laws of Rhode Island, and it was authorized to do business in Massachusetts. On July 17, 1972, the DPW, pursuant to c. 29, § 8B, issued Wendell a prequalification certificate which was effective through August 31, 1973. Section 8B directs the DPW Commissioner to require any company proposing to bid on work described in that provision to submit a written statement, under the penalties of perjury, setting forth its qualifications to perform work for the DPW. This section details the information that must be contained in the statement and the procedure by which the Commissioner and the DPW prequalification committee assisting him shall make a determination as to the qualifications of a prospective bidder to perform the work. On the basis of this information, as well as any past performance history of the company, the Commissioner and the committee "determine the class and aggregate amount of work such bidders are qualified to perform" in accordance with the "classification and maximum capacity rating of bidders" system established by them. The statute further specifies that the Commissioner shall not consider any bid of or contract award to any company not qualified under that provision or the DPW rules and regulations promulgated pursuant to it. Wendell's certificate

qualified it to do "Electrical & Signs, Highway Electrical & Signs." work for the DPW up to the maximum capacity rating of $2,200,000. The amount of the contract here in dispute is $523,406.20.

On November 14, 1972, Wendell filed in the office of the Rhode Island Secretary of State a copy of the amendment to its articles of association changing its name to Coken. It filed with the State Secretary of Massachusetts on December 15, a certificate from the Rhode Island Secretary of State which stated that Wendell had changed its name to Coken on November 14 and "that the authority to do business in Massachusetts has not been withdrawn or revoked, and that Coken Company, Inc. is qualified to do business in Massachusetts at this date, and no other amendments have been filed with this office effecting Coken Company, Inc." The DPW had invited sealed bids on the Malden project on November 25, 1972, and it had announced that these bids would be opened on January 9, 1973.

On January 3, 1973, Myron L. Coken, the vice-president of Wendell until November 14, 1972, and then the vice-president of Coken, requested a bid proposal kit on the Malden project from the DPW. Notwithstanding the corporate change of name, he made the request in his name and as vice-president of Wendell Corporation. The proposal form specified that each prospective bidder "must be prequalified and certified" in accordance with the DPW's rules and regulations if the amount of the proposal, along with the value of any uncompleted work under contract with the DPW, would exceed $50,000. It further provided that "no contract will be awarded except to a responsible bidder" which had been prequalified and certified, and that the contract would be awarded "to the lowest responsible bidder."[2] On

---

[2] General Laws c. 30, § 39M(a), inserted by St. 1963, c. 842, § 1, stated in part: "Every contract . . . shall be awarded to the lowest responsible and eligible bidder . . .; provided, however, that such awarding authority may reject any and all bids, if it is in the public interest so to do."

Section 39M(c), defines "lowest responsible and eligible bidder" as "the lowest of those bidders possessing the skill, ability and integrity necessary

January 9, 1973, Myron L. Coken, as vice-president of Wendell, submitted a bid in Wendell's name. When the DPW voted to award Wendell the contract, Coken signed it for Wendell on March 5, 1973, as its vice-president, and he signed the necessary performance and payment bonds, upon which Wendell was the designated principal, in the same manner.

On April 24, 1973, the DPW's prequalification committee wrote to Wendell stating that it was giving consideration to the revocation of Wendell's prequalification certificate. It stated that it had received information that Wendell had changed its name but that the DPW had never been advised of this as required by the DPW's rules. The committee instructed Wendell to advise it immediately of "any change in the name or structure of your firm, officers or ownership, if it is a fact that any of these changes took place." At its meeting held on May 1, 1973, the DPW commissioners voted to rescind Wendell's contract of March 5, 1973, because Wendell had "ceased to exist on November 14, 1972," and, therefore, that the contract was a "nullity." The DPW notified Wendell of this by a letter dated May 2, 1973, in which it was stated that Wendell "was not in existence and was not qualified to do business within . . . Massachusetts" and that the DPW was consequently precluded by G. L. c. 30, § 39M, from entering into a contract with it.

The gist of the DPW's contentions is that c. 29, § 8B, and c. 30, § 39M, express a legislative intent and public policy concern that prospective bidders on DPW projects be identified and qualified. They argue that any violation of these provisions is an illegality of sufficient magnitude to require forfeiture of the contract. See *Town Planning & Engineering Assoc.* v. *Amesbury Specialty Co.*, 369 Mass. 737, 744-747 (1976). The illegality the DPW here points to is the

for the faithful performance of the work, who shall certify that he is able to furnish labor that can work in harmony with all other elements of labor employed or to be employed in the work, and who, where the provisions of section eight B of chapter twenty-nine apply, shall have been determined to be qualified thereunder."

award of a DPW contract to a nonexistent company whose successor, Coken, could not bid on or be awarded the contract because it did not possess a prequalification certificate.

The flaw in the DPW's position is that it rests upon the erroneous assumption that it awarded its contract to a nonexistent company. Wendell, however, neither ceased to exist on November 14, 1972, nor surrendered a right to transact business in the name of Wendell after that date. "A mere change in the name of a corporation, either by the legislature or by the corporators or stockholders under legislative authority, does not, generally speaking, affect the identity of the corporation, nor in any way affect the rights, privileges, or obligations previously acquired or incurred by it. Indeed, it has been said that a change of name by a corporation has no more effect upon the identity of the corporation than a change of name by a natural person has upon the identity of such person. The corporation, upon such change in its name, is in no sense a new corporation, nor the successor of the original one, but remains and continues to be the original corporation. It is the same corporation with a different name, and its character is in no respect changed." 6 Fletcher, Cyclopedia of Corporations § 2456, at 216 (rev. perm. ed. 1979). See *Minot* v. *Curtis*, 7 Mass. 441, 444 (1811) ("[W]e know not why corporations may not be known by several names, as well as individuals"); *William Gilligan Co.* v. *Casey*, 205 Mass. 26, 31 (1910) ("It is well settled that a person or corporation may assume or be known by different names, and contract accordingly, and that contracts so entered into will be valid and binding if unaffected by fraud"); *Lord* v. *Cummings*, 303 Mass. 457, 458 (1939); *Sales Fin. Corp.* v. *McDermott Appliance Co.*, 340 Mass. 493, 494 (1960). See also *Detroit Automatic Scale Co.* v. *Taylor*, 67 Okla. 121, 122 (1917); *St. Louis Expanded Metal Fireproofing Co.* v. *Beilharz*, 88 S.W. 512, 514-515 (Tex. Civ. App. 1905); *Esquire Swimming Pool Prod., Inc.* v. *Pittman*, 114 R.I. 238, 241 (1975); *Engineering Assoc., Inc.* v. *B & L Liquidating Corp.*, 115 N.H. 508, 512 (1975). Compare *Ernest Freeman & Co.* v. *Robert G. Regan Co.*,

332 Ill. App. 637, 648-649 (1947) ("A corporation retains its corporate identity when it changes its name . . . . In the case at bar, however, a corporation changed its name and a few days thereafter a charter was issued to a newly organized corporation in the previous name of the corporation that had changed its name. Therefore, there are two distinct entities"). The record gives no indication that there was any change in the charter of the corporation, the nature or management of its business, or its financial responsibility; rather, it shows only that a change of name occurred. It was open to the DPW to show that the transaction and the contract were affected by fraud and were illegal. *Lord* v. *Cummings*, 303 Mass. at 458. All that it demonstrated was that Wendell changed its name to Coken and that it advised the State Secretaries of Rhode Island and Massachusetts of this fact, but not the DPW with which it transacted business in the name of Wendell. This does not constitute fraud.[3] *William Gilligan Co.* v. *Casey*, 205 Mass. at 31. Nor would the corporation's change of name alone have any effect on the performance and payment bonds it submitted to the DPW, and the surety would remain liable on its bonds with Wendell. See *Simpionbato* v. *Royal Ins. Co.*, 253 Mass. 606, 609 (1925); 6 Fletcher, Cyclopedia of Corporations § 2445, at 187 (rev. perm. ed. 1979). Compare *Worth Corp.* v. *Metropolitan Cas. Ins. Co.*, 142 Misc. 734, 737-738 (N.Y. Sup. Ct. 1932) (surety on a corporation's bond was held not liable for events occurring after the corporation had become *merged* into another corporation). Because the corporation underwent a change in name only and never ceased to exist, and because the corporation never committed a fraud on the DPW, the corporation was prequalified

---

[3] The DPW points to Coken's prequalification certificate upon which the corporation's address, telephone number, and maximum capacity rating are different from those appearing on Wendell's certificate. However, these facts, without more, are not sufficient to create an inference of fraud at the time of the bid and contract, especially in light of the fact that this information appears on Coken's certificate which issued some time subsequent to August 20, 1973.

and eligible to bid on the project. The judge correctly concluded that a mere change of name did not affect the corporation's qualifications to perform its contractual obligations.

The DPW next maintains that Coken's failure to respond to its letter of April 24, 1973, was a violation of the DPW rules which induced the DPW to rescind the contract it reasonably believed to be illegal. It relies upon *Runkle* v. *Burrage*, 202 Mass. 89, 99 (1909) ("In the absence of fraud, nothing less than conduct that amounts to an abrogation of the contract, or that goes to the essence of it, or takes away its foundation, can be made a ground for rescission of it by the other party"). The facts, however, do not support the DPW's position. The letter of April 24 contained no indication or warning that consideration was being given to rescinding the contract; rather, it indicated that consideration was being given to a revocation of the prequalification certificate. The applicable portions of the pertinent DPW rules provide that the occurrence of any change in the corporate name after the time of filing the statement required by § 8B, "shall be" reported to the DPW "whereupon a new application for prequalification may be required." 16 Code Mass. Regs. § 5.03(3) (1979). They further state that if after the filing of the required § 8B statement, the DPW "has substantial reason to believe that the condition of a firm previously prequalified is less favorable than at the time of its last application," a new written statement from the firm "shall be requested," and that if it is not filed within thirty days, "the current [r]atings shall be considered forfeited." *Ibid.* In the event of a forfeiture of the ratings, the firm will not be allowed to bid until the DPW has received and acted upon the new § 8B statement. The rules cited by the DPW do not contemplate rescission of an existing contract because of a failure to comply with those rules; at most, they contemplate a revocation of the certificate and an ensuing ineligibility to bid on DPW projects. Additionally, although the DPW requested that it be furnished the described information "immediately," the rules, as noted, allow a company

thirty days in which to provide the written statement. The DPW voted to rescind the contract, not the certificate, seven days after it sent the letter to Wendell, and the minutes of the vote show that its basis was the DPW's mistaken belief that Wendell was not in existence at the time of its bid or the contract. If this failure to reply to the April 24 letter reinforced the DPW in its mistaken belief, it was not Coken's doing. The letter neither disclosed the DPW's apprehensions to Coken nor put it on notice of any action other than a forfeiture of its certificate. While these facts may demonstrate that the DPW did not act in bad faith, they do not support its contentions that Coken conducted itself in a manner that abrogated or contradicted the contract or otherwise induced the DPW to act precipitously. The judge properly concluded that the DPW breached its contract with Coken.

The judge assessed damages in an amount he determined would put Coken in the same position as if the contract had been performed, but he made no finding to show that the amount he had determined was warranted upon the evidence. See *Hastoupis* v. *Gargas, ante* 27, 39 (1980). Coken asks that we make our own findings on this issue, *Paone* v. *Gerrig*, 362 Mass. 757, 759 (1973); *Bartevian* v. *Cullen*, 369 Mass. 819, 820-821 n.1 (1976), and affirm that aspect of the judgment. We decline to do so because here, unlike in *Western Mass. Elec. Co.* v. *Sambo's of Mass., Inc.*, 8 Mass. App. Ct. 815, 817 (1979), the record is insufficient, and the reported testimony reflects many unresolved conflicts and ambiguities.

So much of the judgment to the effect that the DPW breached its contract with Coken is affirmed; that portion of the judgment assessing the specified amount of damages is vacated, and the matter is remanded to the Superior Court for further proceedings on the issue of the amount of damages to be awarded to Coken.

*So ordered.*