DAVID CARON CHRYSLER MOTORS, LLC, ET AL. *v.*
GOODHALL'S, INC., ET AL.
(AC 30232)

Gruendel, Beach and Dupont, Js.

Argued December 8, 2009—officially released June 29, 2010

*Walter A. Twachtman, Jr.,* for the appellants
(plaintiffs).

*Edward Muska,* with whom was *F. Joseph Paradiso,*
for the appellees (defendants).

*Opinion*

GRUENDEL, J. The plaintiffs, David Caron Chrysler
Motors, LLC, and David A. Caron, appeal from the judg-
ment of the trial court in favor of the defendants, Good-
hall's, Inc., Goodhall's Garage, Inc., and Lucille

Goodhall, administratrix of the estate of Wallace Good-hall, Jr.[1] On appeal, the plaintiffs claim that the court improperly found that there was no enforceable lease between the plaintiffs and the defendants, and, therefore, the defendants could not be liable for any damages arising out of various claimed breaches of the lease. We affirm the judgment of the trial court.

The following facts found by the court are relevant to our discussion. In the mid-1950s, Wallace Goodhall, Jr., opened a service station located at 2 Mashapaug Road in Union. Thereafter, Wallace Goodhall, Jr., secured a Chrysler franchise, and that business became known as Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC. Wallace Goodhall, Jr., maintained ownership of the land through his corporation, Goodhall's Garage, Inc. In 1996, he sold the business to Jerry L. Yost and leased the land and building to Yost with an option to purchase.[2] The lease provided that there will be no assignment of the lease "without the prior written consent of the landlord." It further provided that a transfer of a majority interest in the limited liability company would constitute an assignment of the lease. In 1998, without obtaining the consent of Goodhall's, Inc., David Caron purchased the business from Yost. The business became David Caron Chrysler Motors, LLC, and occupied the property on which it was located. A dispute resulted, and the plaintiffs brought this action for damages. In its memorandum of decision, filed August 18, 2008, the court found that there was no contract between "Caron and Goodhalls . . . ."

In our view, the court must be credited with finding what it stated it found, not what we want to impute from

[1] It is not clear from the pleadings why Caron and Wallace Goodhall, Jr., were made parties in their individual capacities, but neither party ever sought a ruling from the trial court on that issue, so it is not before us.

[2] The lease ran from Goodhall's, Inc., to Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC.

its words. Thus, in analyzing the procedural history and factual background of this case, we also are compelled to look to what the court did not find. In its memorandum of decision, the court defined "Caron" as "David Caron." It wrote: "In 1997, David Caron (Caron) was told by his attorney . . . that he might want to look into the Yost owned dealership . . . ." Nowhere in the decision did the court indicate that it intended to refer to Caron as anyone or anything other than David Caron. Specifically, the court never used the term Caron as a shorthand way to denominate the entity David Caron Chrysler Motors, LLC.[3] That entity is mentioned in the memorandum of decision but not in connection with the court's determination that there was no contract between "Caron and Goodhalls . . . ." Put simply, the court made no finding that there was or was not a contract between the two corporate parties, David Caron Chrysler Motors, LLC, and Goodhall's, Inc.

At best, the court's finding is ambiguous. It is axiomatic that "[a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification." (Internal quotation marks omitted.) *Nicefaro* v. *New Haven*, 116 Conn. App. 610, 617, 976 A.2d 75, cert. denied, 293 Conn.

---

[3] The dissent argues that the court's use of the term "parties" shows that "the trial court clearly found that there was no lease between David Caron Chrysler Motors, LLC, and Goodhall's, Inc." It supports that contention with two findings made by the court: (1) "[t]here were negotiations between the parties (Goodhall's, Inc., and David Caron [or] Caron Chrysler Motors, LLC)," and (2) "[t]he fact is, there was never any contract between the parties to this action." According to the dissent, the two statements, taken together, make clear that the latter statement "could only mean that there was no lease between either of the named defendants." We do not agree. The court also found that "there was never any contract between the parties to this action. Caron made an unwise business decision to purchase the Yost business in spite of *his* awareness that Goodhall had to approve any assignment of the lease." (Emphasis added.) In view of that finding, it is far from clear whether the court's use of the term parties includes anything more than David Caron and Goodhall. Rather, it is ambiguous.

937, 981 A.2d 1079 (2009). Moreover, "[w]here the trial court's decision is ambiguous, unclear or incomplete, an appellant must seek an articulation . . . or this court will not review the claim." (Internal quotation marks omitted.) *Testone* v. *C. R. Gibson Co.*, 114 Conn. App. 210, 223, 969 A.2d 179, cert. denied, 292 Conn. 914, 973 A.2d 663 (2009); see also *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005) ("[s]peculation and conjecture have no place in appellate review"); *Cianbro Corp.* v. *National Eastern Corp.*, 102 Conn. App. 61, 71–72, 924 A.2d 160 (2007) (incumbent on appellant to provide adequate record for review). "In the absence of a motion for articulation, we read an ambiguous trial record to support, rather than to undermine, the judgment." (Internal quotation marks omitted.) *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 707, 981 A.2d 497 (2009), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010); *Zabaneh* v. *Dan Beard Associates, LLC*, 105 Conn. App. 134, 142, 937 A.2d 706 (same), cert. denied, 286 Conn. 916, 945 A.2d 979 (2008). Here, the court found that there was no enforceable contract. Notably, the plaintiffs failed to seek an articulation, as permitted by Practice Book § 66-5. Because the plaintiffs failed to seek an articulation, we must read the court's memorandum of decision to support, rather than undermine, its judgment that no contract existed between "Caron and Goodhalls . . . ."

The judgment is affirmed.

In this opinion BEACH, J., concurred.

DUPONT, J., dissenting. I respectfully dissent from the majority's conclusion that the judgment of the trial court in favor of the defendants, Goodhall's, Inc., Goodhall's Garage, Inc., and Lucille Goodhall, administratrix of the estate of Wallace Goodhall, Jr., should be

affirmed. The majority reasons that because the plaintiffs, David Caron Chrysler Motors, LLC, and David A. Caron, failed to provide an adequate record for review by not seeking a necessary articulation of the trial court's memorandum of decision, there is a presumption that the court properly determined that no lease existed between the parties.

I do not agree that the plaintiffs needed to seek an articulation and, therefore, I do not presume that the judgment of the court that no enforceable lease between the parties existed should be affirmed for failure of the plaintiffs to seek articulation. I would conclude that the court clearly found that there was no lease between David Caron Chrysler Motors, LLC, and Goodhall's, Inc. Furthermore, I would conclude that this finding is clearly erroneous, because a change in the name of the limited liability company, particularly, Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, to David Caron Chrysler Motors, LLC, did not affect the latter's entitlement to claim under a lease that was entered into by its predecessor. I would, therefore, reverse the judgment in favor of the defendants and remand the case to the trial court to determine the rights and liabilities of the parties pursuant to the lease.

I

In resolving whether a motion for articulation was necessary, we must refer to the court's memorandum of decision. I would conclude, for the reasons, hereinafter discussed, that a motion for articulation of the court's memorandum was not needed.

The court made two statements in its memorandum that relate to whether there was or was not a lease between Goodhall's, Inc., and David Caron Chrysler Motors, LLC. The first statement was, "[t]he fact is, there was never any contract between the parties to this

action,"[1] and the second was, "[t]here was no contract between Caron and Goodhalls, explicit or implied." The question is whether a plain reading of those statements is the equivalent of a finding that there was or was not a lease between David Caron Chrysler Motors, LLC, and Goodhall's, Inc. As to the first statement, it is clear that the parties in this case are the plaintiffs, David Caron and David Caron Chrysler Motors, LLC, and all of the Goodhall defendants. This statement could only mean that there was no lease between either of the two plaintiffs and any one of the defendants. The second statement is not contradictory of the first statement because it would be included in the court's first statement that there was no contract between either one of the plaintiffs, David Caron or David Caron Chrysler Motors, LLC, and any one of the Goodhall defendants. On the basis of a plain reading of the memorandum of decision, I believe the court found that there was no contract between David Caron, individually, and any of the defendants and also found that there was no contract between David Caron Chrysler Motors, LLC, and any of the defendants.

David Caron, individually, did not allege in his complaint that he had a lease with any of the defendants. The corporate entity, David Caron Chrysler Motors, LLC, did allege that it had a lease with Goodhall's, Inc. On the basis of the allegations in the complaint, the court's finding that "there was never any contract between the parties" makes it clear that the term parties included David Caron Chrysler Motors, LLC. See *Stein* v. *Tong*, 117 Conn. App. 19, 26, 979 A.2d 494 (2009) ("The purpose of the complaint is to limit the issues to

[1] In a previous paragraph of the memorandum of decision, before this statement, the court states that "[t]here were negotiations between the parties (Goodhall's, Inc., and David Caron [or] David Caron Chrysler Motors, LLC) . . . ." Therefore, the court describes the term parties to include Goodhall's, Inc., David Caron and David Caron Chrysler Motors, LLC.

be decided at the trial of a case and is calculated to prevent surprise. . . . A complaint should fairly put the defendant on notice of the claims against him. . . . Thus, a plaintiff during trial cannot vary the factual aspect of his case in such a way that it alters the basic nature of the cause of action alleged in his complaint. . . . In other words, [a] plaintiff may not allege one cause of action and recover upon another." [Internal quotation marks omitted.]). Thus, I would conclude that it is clear from the memorandum of decision that the court found that there was no lease between David Caron Chrysler Motors, LLC, and any one of the defendants.

The majority bases the need for the articulation on the conclusion that the use of the word "Caron" excludes David Caron Chrysler Motors, LLC, because the court's memorandum states that David Caron *in 1997* "was told by his attorney . . . that he might want to look into the Yost owned dealership," which Jerry L. Yost had purchased from Wallace Goodhall in 1996. In 1997, David Caron Chrysler Motors, LLC, did not yet exist, and, therefore, the statement could not be analyzed to conclude that whenever "Caron" was used in the memorandum, it meant David Caron individually and not the limited liability company. I agree that whenever the name "Caron" is used in the decision, it refers to David Caron individually because the statements refer to events occurring before May 24, 1999, the date Jerry Yost's Chrysler Motors, LLC, became David Caron Chrysler Motors, LLC. Therefore, I do not believe that the limited liability company was excluded from such statements for any reason other than the fact that the limited liability company did not yet exist in the context of the statements.

Furthermore, the court made other findings of fact in its memorandum of decision that make it clear that it found that there was no lease between David Caron

Chrysler Motors, LLC, and Goodhall's, Inc. Specifically, the court in its memorandum of decision noted that there were negotiations between the parties, namely, Goodhall's, Inc., and David Caron or David Caron Chrysler Motors, LLC, and went on to conclude that there was no contract between Caron and Goodhall's, Inc. The fact that the negotiations were on behalf of both the plaintiffs would indicate that the conclusion that there was no contract between the parties included both David Caron and David Caron Chrysler Motors, LLC. On the basis of the foregoing, I would conclude that the court's memorandum of decision makes clear that it found that there was no lease between David Caron Chrysler Motors, LLC, and Goodhall's, Inc.

II

Having determined that the court found that there was no lease between David Caron Chrysler Motors, LLC, and Goodhall's, Inc., I can review this finding on appeal. The scope of appellate review depends on the characterization of the rulings made by the trial court. "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992). "A lease is a contract and questions concerning it are determined in accordance with usual contract law. . . . Whether a contract exists is a question of fact or a mixed question of fact and law for the court to determine." (Citation omitted; internal quotation marks omitted.) *Amwax Corp.* v. *Chadwick*, 28 Conn. App. 739, 741, 612 A.2d 127 (1992). In the present case, the question of whether a contract existed did not depend on the credibility of the parties but, rather, on the record, and raises

a question of law for which our review is plenary.[2] See *Morton Buildings, Inc.* v. *Bannon*, supra, 53–54.

The following facts were either admitted by the defendants in their answer to the plaintiffs' complaint[3] or found by the court in its memorandum of decision. A five year lease, dated June 20, 1996, was entered into by Goodhall's, Inc., and Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, a predecessor of the plaintiff's limited liability company, for the premises at 2 Mashapaug Road, Union. Wallace Goodhall signed the lease as the president of Goodhall's, Inc., the landlord. Yost signed the lease as a member of Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, the tenant. On July 14, 1997, Yost changed the name of the business from Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle LLC, to Jerry Yost's Chrysler Motors, LLC. The court found that in October, 1998, Caron purchased a majority interest[4] in Jerry Yost's Chrysler Motors, LLC, without obtaining the permission of the landlord, Goodhall's, Inc., as required by the terms of the lease.[5]

---

[2] Plenary review also would be appropriate if the questions were determined to be a mixed question of fact and law. See *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 1356 (1991).

[3] "[T]he admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader. . . . A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it." (Internal quotation marks omitted.) *Mercer* v. *Cosley*, 110 Conn. App. 283, 301, 955 A.2d 550 (2008).

[4] Specifically, the record reveals that Caron bought a 75 percent interest in Jerry Yost's Chrysler Motors, LLC.

[5] The lease stated: "Except as expressly otherwise provided in this Article, neither this Lease nor any part hereof, nor the interest of Tenant in any sublease or the rentals thereunder, shall, by operation of law or otherwise, be assigned, mortgaged, pledged, encumbered or otherwise transferred by Tenant, Tenant's legal representatives or successor in interest, and neither the Demised Premises nor any part thereof shall be encumbered in any manner by reason of any act or omission on the part of Tenant, or anyone claiming, under or through, Tenant, or shall be sublet or be used, occupied or utilized for desk space, mailing privileges, or any other purpose for or by any other [principals] or entities other than Tenant, without the prior written consent of Landlord, which consent shall not be unreasonably withheld. If Tenant is other than an individual, a transfer in any single transaction

On May 24, 1999, Caron changed the name of the business from Jerry Yost's Chrysler Motors, LLC, to David Caron's Chrysler Motors, LLC. Goodhall's, Inc., instituted a summary process action, returnable on March 27, 2000, against David Caron Chrysler Motors, LLC, for nonpayment of rent. On June 20, 2000, a stipulation was entered into between Goodhall's, Inc., and David Caron Chrysler Motors, LLC, which provided that the lease, dated June 20, 1996, be terminated by mutual agreement and that the mutual agreement to terminate the lease "shall not terminate, release, and/or discharge any claims or causes of action which either of the parties to said agreement have against the other as a result of actions or inaction which occurred prior to the termination of said [l]ease." The parties agree in their respective briefs that the lease, dated June 20, 1996, between Goodhall's, Inc., and Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, governs the parties to this action and the use of the premises owned by Goodhall's, Inc.

I would conclude, for the following reasons, that the court's finding that there was no lease agreement between Goodhall's, Inc., and David Caron's Chrysler Motors, LLC, was not legally and logically correct. The defendants admitted in their answer that David Caron Chrysler Motors, LLC, is the same legal entity as Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, the name that appears on the lease. The defendants also admitted in their answer that the entity, Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, has changed its name twice since the signing of the lease, to Jerry Yost's Chrysler Motors, LLC, on July 14, 1997, and then to David Caron Chrysler Motors, LLC, on May 24, 1999.

or in a series of transactions of more than forty-nine percent (49%) in interest of Tenant (whether stock, Partnership interest or otherwise) by any party(ies) in interest shall be deemed an assignment of this Lease."

As a preliminary matter, a review of some general principles governing limited liability companies is warranted. "[Limited liability companies] are hybrid entities that combine desirable characteristics of corporations, limited partnerships, and general partnerships. [They] are entitled to partnership status for federal income tax purposes under certain circumstances, which permits [limited liability company] members to avoid double taxation, i.e., taxation of the entity as well as taxation of the members' incomes. . . . Moreover . . . members, unlike partners in general partnerships, may have limited liability, such that . . . members who are involved in managing the [limited liability company] may avoid becoming personally liable for its debts and obligations." (Internal quotation marks omitted.) *Weber* v. *U.S. Sterling Securities, Inc.*, 282 Conn. 722, 729, 924 A.2d 816 (2007). "A limited liability company is a distinct legal entity whose existence is separate from its members. . . . A limited liability company has the power to sue or be sued in its own name; see General Statutes §§ 34-124 (b) and 34-186; or may be a party to an action through a suit brought in its name by a member. See General Statutes § 34-187." (Citation omitted.) *Wasko* v. *Farley*, 108 Conn. App. 156, 170, 947 A.2d 978 (2008). A limited liability company may amend its name at any time. See General Statutes §§ 34-121 and 34-122 (b).[6]

It is well established in corporate law that a change in name does not affect the identity, rights, or liabilities of the corporation. See *Trinity Church* v. *Hall*, 22 Conn.

---

[6] General Statutes § 34-121 provides in relevant part: "The articles of organization of a limited liability company . . . shall set forth . . . [a] name for the limited liability company that satisfies the requirements of section 34-102 . . . ."

General Statutes § 34-122 (b) provides: "The articles of organization may be amended in any and as many respects as may be desired, so long as the articles of organization as amended contain only provisions that may be lawfully contained in articles of organization at the time of making the amendment."

125, 132 (1852) ("[n]ames, in such case, are arbitrary, and do not at all affect the identity of the corporation"). That principle is also applicable to limited liability companies.[7] A review of the law concerning change of name of a corporation is instructive. "An authorized change in the name of a corporation has no more effect on its identity as a corporation than a change of name of a natural person has upon his identity; the corporation's identity remains unchanged. A corporate name change does not make a new corporation, but only gives the corporation a new name. A change of name in no way affects the corporation's nature or legal existence; a corporation's legal existence commences upon the filing of articles of incorporation, and amendment of the articles merely to change the corporation's name does not affect its perpetual existence.

"A corporation name change does not affect the rights of the corporation or lessen or add to its obligations, and has no effect on the corporation's property. Thus, a corporate name change does not affect the liability of the corporation, including contractual liability. Moreover, there is no need for a formal assignment of trademark rights from a corporation under an old name to a corporation under a new name." 18A Am. Jur. 2d, Corporations § 240 (2004); see also 18 C.J.S. 438–39, Corporations § 140 (2007) ("The change of a corporation's name is not a change of its identity and has no effect on the corporation's property, rights, or liabilities . . . . The change does not affect the title of the corporation to property or choses in action, or require any

---

[7] Pursuant to General Statutes §§ 33-636 and 33-655, the certificate of incorporation shall set forth a corporate name for the corporation, and a corporation may amend the certificate of incorporation at any time. Similarly, in the articles of incorporation, a limited liability company's name shall be set forth and may be amended at any time. See 1 L. Ribstein & R. Keatinge, Limited Liability Companies (2d Ed. 2007) § 4:19, p. 4-55 ("As with LLCs, the corporate name serves to identify the firm and to notify third parties of the incorporated nature of the firm. Accordingly, rules regarding corporate name are similar to those regarding LLC names.").

conveyance or assignment to the corporation in the new name. The corporation continues, as before, responsible in its new name for all debts or other liabilities which it had previously contracted or incurred. It is also entitled to enforce contracts made or other liabilities incurred to it before the change . . . ."); *Coken Co.* v. *Dept. of Public Works*, 9 Mass. App. 586, 590, 402 N.E.2d 1110 (1980) ("[A] change of name by a corporation has no more effect upon the identity of the corporation than a change of name by a natural person has upon the identity of such person. The corporation, upon such change in its name, is in no sense a new corporation, nor the successor of the original one, but remains and continues to be the original corporation. It is the same corporation with a different name, and its character is in no respect changed." [Internal quotation marks omitted.]).

Because a change in name to David Caron's Chrysler Motors, LLC, from the original name of Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, does not affect the entity's ability to enforce contracts made in its previous name, the court's finding that "there was never any contract between the parties to this action" is not legally and logically correct. The tenant, David Caron Chrysler Motors, LLC, under the lease, dated June 20, 1996, was entitled to bring an action against the landlord, Goodhall's, Inc., pursuant to the lease. The court found that Caron's purchase of a majority interest of the business was without the landlord's permission and would constitute a breach of the terms of the lease. Nevertheless, according to the terms of the lease, the lease would not automatically terminate.[8] See

[8] Pursuant to the terms of the lease, a tenant's default does not automatically terminate the lease. Section 20.02 of the lease provides that "if Tenant shall (i) do or permit anything to be done, whether by action or inaction contrary to any of Tenant's obligations hereunder, or (ii) default in the performance of any covenant or condition of this Lease . . . Landlord may (in addition to any and all rights at law or in equity) re-enter and remove all persons and Tenants Property and/or other property from the Demised

*Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 267–78, 757 A.2d 526 (2000); see also *Fellows* v. *Martin*, 217 Conn. 57, 68, 584 A.2d 458 (1991) ("as a general rule, covenants in a lease are independent)." On the basis of its finding that there was no lease, the court did not make any factual findings concerning the plaintiffs' complaint for breach of the terms of the lease. See *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 469, 948 A.2d 379 ("[w]hether there was a breach of contract is ordinarily a question of fact" [internal quotation marks omitted]), cert. denied, 289 Conn. 906, 957 A.2d 873 (2008). In the absence of any factual finding, I cannot determine whether Goodhall's, Inc., breached any provisions of the lease entitling David Caron Chrysler Motors, LLC, to damages pursuant to any breach.

I would reverse the judgment in favor of the defendants and remand the case to the trial court to determine the rights and liabilities of the parties pursuant to the lease.

---

Premises and such Tenants Property and other property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of Tenant, all with service of notice and resort to legal process and without being deemed guilty of trespass, or becoming liable for any loss or damage which may be occasioned thereby."

Furthermore, § 20.03 of the lease provides: "Should Landlord elect to re-enter, as herein provided, or should he take possession pursuant to legal proceedings or pursuant to any notice provided for by law, Landlord may terminate this Lease, and/or make such alterations and repairs as may be necessary in order to relet the Demised Premises . . . . No such re-entry or taking possession of Demised Premises by Landlord shall be construed as an election on its part to terminate this Lease unless written notice of such intention be given to Tenant or unless the termination thereof be decreed by a court of competent jurisdiction. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for such previous breach."

Last, § 26.01 of the lease requires that "[a]ny notice, statement, demand or other communication required or Permitted to be given, rendered or made by either Party to the other, Pursuant to this Lease . . . shall be in writing, (whether or not so stated elsewhere in this Lease) . . . ." See *Robinson* v. *Weitz*, 171 Conn. 545, 551–52, 370 A.2d 1066 (1976).