43 A.3d 164 (2012)
304 Conn. 738
DAVID CARON CHRYSLER MOTORS, LLC, et al.
v.
GOODHALL'S, INC., et al.
No. 18694.
Supreme Court of Connecticut.
Argued January 6, 2012.
Decided May 15, 2012.
*166 Walter A. Twachtman, Jr., Glastonbury, for the appellants (plaintiffs).
Edward Muska, Stafford Springs, with whom was F. Joseph Paradiso, Rockville, for the appellees (defendants).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN, EVELEIGH and HARPER, Js.
McLACHLAN, J.
In this certified appeal, we must determine whether a tenant's assignment of a commercial lease in breach of a provision prohibiting such assignment without the landlord's consent is void or merely voidable. The plaintiffs, David Caron and David Caron Chrysler Motors, LLC, appeal, upon our grant of certification,[1] from the judgment of the Appellate Court affirming the trial court's judgment in favor of the defendants, Goodhall's, Inc., Goodhall's Garage, Inc., and Lucille Goodhall, administratrix of the estate of Wallace Goodhall, Jr. David Caron Chrysler Motors, LLC v. Goodhall's, Inc., 122 Conn. App. 149, 149-50, 997 A.2d 647 (2010). The plaintiffs claim that the Appellate Court improperly failed to consider their claim that the trial court had improperly concluded that no contract existed between David Caron Chrysler Motors, LLC, and Goodhall's, Inc. The plaintiffs further urge this court to conclude that the trial court improperly determined that there was no contract between David Caron Chrysler Motors, LLC, and Goodhall's, Inc. We agree with the plaintiffs, and, accordingly, reverse the judgment of the Appellate Court.
This breach of lease action concerns real property located at 2 Mashapaug Road, in the town of Union (property), which has been owned by Goodhall's, Inc. (Goodhall's), since 1961. Wallace Goodhall, Jr., operated a vehicle service station and Chrysler franchise on the property until 1996, when Jerry Yost, through a limited liability company known as Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, bought the business and leased the property from Goodhall's. The lease identified Goodhall's as the landlord, and Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, as the tenant. The lease stipulated that no part of the lease "shall, by operation of law or otherwise, be assigned... without the prior written consent of [the] [l]andlord, which consent shall not be unreasonably withheld" (antiassignment provision).[2] It further provided that *167 a transfer of a majority interest in the tenant would constitute an assignment of the lease. Notwithstanding the antiassignment provision, in 1998, Caron purchased a majority membership interest in Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC,[3] without having obtained the written consent of Goodhall's.
A dispute arose concerning the party responsible for remediating certain environmental conditions on the property. The plaintiffs commenced the present action for damages, claiming, inter alia, that the defendants had violated provisions in the lease regarding Goodhall's responsibility for preexisting environmental conditions and Goodhall's warranty of fitness and habitability.[4] The trial court rendered judgment in favor of the defendants. The court concluded that no contract existed between "the parties to this action" because the assignment of a majority interest in the tenant to Caron was invalid Caron had not obtained Goodhall's prior written consent to the assignment and the plaintiffs had not established that Goodhall's consent had been unreasonably withheld.
The plaintiffs appealed from the trial court's decision to the Appellate Court, claiming that the trial court improperly had found that no enforceable lease existed between the plaintiffs and Goodhall's. David Caron Chrysler Motors, LLC v. Goodhall's, Inc., supra, 122 Conn.App. at 150, 997 A.2d 647. The Appellate Court affirmed the trial court's judgment. Id., at 152, 997 A.2d 647. In reaching this decision, the Appellate Court first determined that the trial court had made no finding with respect to the contractual relationship between David Caron Chrysler Motors, LLC, and Goodhall's; id., at 151, 997 A.2d 647; rather, it was unclear whether the trial court's statement that no contract existed between "the parties to this action" referred only to Caron, individually. Id., at 151 n. 3, 997 A.2d 647. The Appellate Court then reasoned that, because the plaintiffs did not seek an articulation from the trial court on this issue, it was required to read any ambiguity in the trial court's decision to support, rather than to undermine, the trial court's judgment.[5] Id., at 152, 997 A.2d 647. This appeal followed. Additional facts will be set forth as necessary.
*168 The plaintiffs argue that the Appellate Court improperly concluded that the trial court's decision contained no finding on whether a contract existed between David Caron Chrysler Motors, LLC, and Goodhall's. Rather, the plaintiffs assert that the trial court clearly found that a contract did not exist between David Caron Chrysler Motors, LLC, and Goodhall's. The plaintiffs further argue that this finding was clearly erroneous. The defendants respond that the Appellate Court's reading of the trial court's decision was correct and, therefore, that the Appellate Court properly affirmed the judgment of the trial court. They suggest that, even if the trial court had found that there was no lease between David Caron Chrysler Motors, LLC, and Goodhall's, there was substantial evidence in the record to support such a finding. We agree with the plaintiffs.

I
We first consider whether the Appellate Court properly determined that the trial court made no finding regarding the existence of a lease between David Caron Chrysler Motors, LLC, and Goodhall's. In its review of the trial court's decision, the Appellate Court focused on the fact that the trial court had defined "Caron" as Caron individually and had referred to Caron in his individual capacity at various points throughout the decision as "Caron." Id., at 151, 997 A.2d 647. The Appellate Court concluded that the trial court's statement that there was no contract between "`Caron and Goodhall['s]'" therefore referred to Caron individually and did not express any opinion on whether there was a contract between David Caron Chrysler Motors, LLC, and any of the defendants. Id.
Our review of the trial court's memorandum of decision, however, leads us to the opposite conclusion. In particular, the trial court stated: "The fact is there was never any contract between the parties to this action." (Emphasis added.) The ordinary meaning of the term "parties" encompasses all of the plaintiffs and defendants to an action. Therefore, a reference to the "parties" would include David Caron Chrysler Motors, LLC, and Goodhall's. Moreover, two sentences before this statement, the court expressly had defined the term "parties" to include Goodhall's, Caron and David Caron Chrysler Motors, LLC.[6] Thus, we understand the court's conclusion that there was no contract between "the parties to this action" to state unambiguously that the court determined that no contract existed between any of the parties, including between David Caron Chrysler Motors, LLC, and Goodhall's.
This interpretation of the trial court's memorandum of decision is consistent with the manner in which the case was presented to the trial court. It is well established that "the right of a plaintiff to recover is limited by the allegations of the complaint ... and any judgment should conform to the pleadings, the issues and the prayers for relief." (Citation omitted; internal quotation marks omitted.) Kawasaki Kisen Kaisha, Ltd. v. Indomar, Ltd., 173 Conn. 269, 272, 377 A.2d 316 (1977). In the plaintiffs' complaint, the only lease in question was the lease between Goodhall's and the entity originally known as Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, which was subsequently renamed David Caron Chrysler Motors, LLC. The plaintiffs did not allege that Caron, individually, had entered into a separate agreement with any of the defendants. *169 Furthermore, a review of the record and the transcripts of the trial court proceedings reveals that the parties litigated the issue of Goodhall's continuing responsibility to remediate environmental conditions on the property under the lease entered into by Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, and Goodhall's. Therefore, we read the memorandum of decision to address the issue of whether the lease entered into by Goodhall's and Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, governed the relationship between the parties.[7]
Finally, we address any confusion created by the trial court's statement that there was no lease between "Caron and Goodhall's" by observing that the trial court consistently equated the tenant with its majority member. For instance, the trial court stated that Wallace Goodhall had leased the property "to Yost" as if Yost, individually, were the tenant under the lease. Similarly, the court stated: "The lease between Yost and Goodhall's ... provided that there `will be no assignment of the lease without the prior written consent of the landlord' and that a transfer of a majority interest in the limited liability company [Yost] would constitute an assignment of the [l]ease." (Emphasis added.) It is undisputed that Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, was the tenant and that Yost was merely the majority member of that tenant at the lease's inception. The fact that the trial court expressly found that the lease "ran from Goodhall's ... to Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC," further reveals that the trial court was not confused as to who the tenant was, but rather viewed the names of the tenant and its majority member as interchangeable. Likewise, when the trial court defined the parties as Goodhall's and "David Caron/David Caron Chrysler Motors, LLC," the use of a forward slash between "David Caron" and "David Caron Chrysler Motors, LLC," indicates that the court equated the two.
Thus, although the trial court used the name "Caron" to refer to Caron individually earlier in the memorandum of decision, we interpret the court's ultimate conclusion that "[t]here was no contract between Caron and Goodhall's, explicit or implied" to mean that the court found no evidence of a contract between Goodhall's and Caron, in his capacity as the majority member and representative of David Caron Chrysler Motors, LLC. Because the trial court's decision makes clear that it concluded that there was no enforceable lease between David Caron Chrysler Motors, LLC, and Goodhall's, the Appellate Court improperly determined that there was no finding on whether there was a contract binding David Caron Chrysler Motors, LLC, and Goodhall's.

II
Having determined that the trial court concluded that there was no enforceable lease between David Caron Chrysler Motors, LLC, and Goodhall's, we turn to the merits of the plaintiffs' claim that this determination was clearly erroneous. The parties do not dispute the trial court's finding that Goodhall's entered into a lease with an entity known as Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, and that this entity's name was changed to Jerry Yost's Chrysler Motors, LLC, and later to David Caron Chrysler Motors, *170 LLC.[8] Nor do the parties dispute that Caron's acquisition of a majority interest in the tenant constituted an assignment under the lease or that the tenant failed to obtain the required consent from Goodhall's. Rather, the parties disagree as to whether the trial court properly concluded that the failure to obtain Goodhall's consent to the assignment of the lease rendered it void as to the plaintiffs, and, therefore, that no contract existed between David Caron Chrysler Motors, LLC, and Goodhall's.
In their brief to this court, the plaintiffs claimed that Goodhall's impliedly waived the consent requirement contained in the antiassignment provision by neither accepting nor rejecting the assignment and by treating the plaintiffs as the tenant under the lease. At oral argument, the plaintiffs further argued that the assignment in default of their duties under the lease did not automatically terminate the lease, but rather gave Goodhall's a right to terminate the lease for breach thereof.[9] In response, the defendants contended that their performance pursuant to the terms of the lease was excused once the antiassignment provision was breached. Thus, to determine whether the original lease of the property entered into by Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, and Goodhall's governed the relationship between David Caron Chrysler Motors, LLC, and Goodhall's despite the lack of consent to the assignment of a majority interest to Caron, we must consider whether a breach of the antiassignment provision renders the resulting assignment void or merely voidable. Because the trial court's determination that the assignment in breach of the antiassignment provision rendered the contract void was a legal determination governed by principles of contract law, our review is plenary. Crews v. Crews, 295 Conn. 153, 161, 989 A.2d 1060 (2010); see also Bria v. St. Joseph's Hospital, 153 Conn. 626, 632, 220 A.2d 29 (1966) (when surrounding circumstances were not in dispute, construction and legal effect of contract was question of law).
Although the plaintiffs rely on the theory that the defendants waived their right to terminate the lease by neither accepting nor rejecting the assignment, we decide the case on a slightly different, but closely related, theory. Specifically, we conclude that this court's decision in Rumbin v. Utica Mutual Ins. Co., 254 Conn. 259, 757 A.2d 526 (2000), controls our resolution of this case. In Rumbin, we held that, unless an antiassignment clause expressly limits the power, as opposed to the right, to assign the contract or invalidates the assignment, the assignment remains valid and enforceable; id., at 269, 757 A.2d 526; but the assignor will be liable for any damages that result *171 from such assignment.[10] Id., at 274, 757 A.2d 526. In other words, without express contractual language providing otherwise, a provision restricting the assignment of a contract will be construed to be a covenant like any other contractual covenanta breach thereof will render the breaching party liable in damages but will not make the contract a nullity. Id., at 263, 757 A.2d 526. We concluded that this approach advanced our policy disfavoring restraints on alienation and provided full compensation when actual damages resulted from the breach. Id., at 278, 757 A.2d 526.
The particular assignment at issue in Rumbin pertained to a structured settlement agreement; however, the principles of contract law that we announced therein were not limited to structured settlement agreements. Rather, we expressly stated that the law of contracts had changed considerably and that we were "reexamin[ing] the basic legal principles regarding contractual antiassignment provisions" to inform our analysis of the particular assignment at issue. Id., at 267, 757 A.2d 526. In our consideration of the modern approach to restrictions on the alienability of contracts, the cases we examined and ultimately followed were not limited to cases in which structured settlement agreements were at issue. See id., at 268-72, 757 A.2d 526. Accordingly, Rumbin pronounced a general rule of contract law.[11]
Although this court has not been confronted with the question of whether Rumbin applies specifically to provisions limiting the assignment of commercial lease agreements of real property, "[a] lease is a contract." Cohn v. Fennelly, 138 Conn. 474, 476, 86 A.2d 183 (1952). "As a contract, a lease is subject to the same rules of construction as other contracts." Middlesex Mutual Assurance Co. v. Vaszil, 279 Conn. 28, 35, 900 A.2d 513 (2006). Accordingly, we have applied general rules on the assignment of contracts to lease agreements. See, e.g., Wesley v. Schaller Subaru, Inc., 277 Conn. 526, 539-40 n. 15, 893 A.2d 389 (2006) (considering rights of assignee of motor vehicle lease); Gateway Co. v. DiNoia, 232 Conn. 223, 225, 654 A.2d 342 (1995) (considering liability of *172 first assignee under commercial lease after lease was reassigned to second assignee); Warner v. Konover, 210 Conn. 150, 154-55, 553 A.2d 1138 (1989) (landlord who retains discretion to withhold consent to tenant's assignment of commercial lease must act in good faith).
Furthermore, the majority of jurisdictions that have considered the issue have held that provisions requiring the consent of the landlord to the assignment of a lease are for the sole benefit of the lessor. Annot., 148 A.L.R. 1362 (1944); see, e.g., Routt County Mining Co. v. Stutheit, 101 Colo. 254, 257, 72 P.2d 692 (1937); Johnson v. Hotel Lawrence Corp., 337 Ill. 345, 349, 169 N.E. 240 (1929); O'Neil v. A. F. Oys & Sons, Inc., 216 Minn. 391, 394, 13 N.W.2d 8 (1944); Dieter v. Scott, 110 Vt. 376, 385, 9 A.2d 95 (1939). As such, an assignment in violation of a covenant against assignment is valid subject to the option of the landlord to terminate the lease. See People v. Klopstock, 24 Cal.2d 897, 901, 151 P.2d 641 (1944) ("[t]he assignment of the lease without the consent of the lessor did not of itself terminate the lease or render the assignment void but the making of such assignment merely gave to the lessor certain rights to be exercised in the manner provided by law" [internal quotation marks omitted]); Johnson v. Hotel Lawrence Corp., supra, at 349, 169 N.E. 240 (provision "does not render the assignment ... absolutely void but voidable only, at the option of the lessor or his representative"); Bemis v. Wilder, 100 Mass. 446, 447 (1868) (stating that if lease containing condition prohibiting assignment with right of entry reserved were breached, "lease would have been valid until the lessor had exercised his option to terminate it"); Holman v. DeLin-River-Finley Co., 30 Or. 428, 438, 47 P. 708 (1897) (antiassignment covenants "were made for the benefit of the lessors, and it was incumbent upon them to reenter in order to terminate the lease or revest the estate in them"); Morrison v. Nelson, 38 Wash.2d 649, 659, 231 P.2d 335 (1951) ("assignment in violation of a restriction is not void, but voidable at the option of the lessor"). As stated by the Supreme Court of Tennessee, "[t]he prevailing rule in the United States can be clearly ascertained from even a casual perusal of the authorities. Said rule is that an assignment made in violation of a restrictive clause is not void, but merely voidable by the lessor. Thus, an estate for years vests in the assignee until effective legal action is taken by the lessor to avoid the transfer." First American National Bank v. Chicken System of America, Inc., 510 S.W.2d 906, 908 (Tenn.1974).
In sum, we see no reason to distinguish our treatment of the assignment of a contract in the context of commercial leases, and we conclude that the principle articulated in Rumbin controls our review of the present case. We therefore agree with the plaintiffs that the failure to obtain the consent to the assignment was a default under the lease and did not render the contract void, but merely voidable.
In the present action, the lease provided in relevant part that no part of the lease "shall, by operation of law or otherwise, be assigned ... without the prior written consent of [the] [l]andlord, which consent shall not be unreasonably withheld." This antiassignment provision does not contain the clear and unmistakable contractual language necessary to limit the power to assign the lease. Although it purports to limit the right to assign the lease, it does not state that an assignment in breach of the provision will be deemed void, invalid or otherwise ineffective automatically. On the contrary, the lease expressly provides a procedure to follow permitting the landlord to reenter *173 and terminate the lease if the tenant breaches the lease.[12] Thus, the assignment of a majority interest in the tenant to Caron in contravention of the antiassignment provision was voidable, not void, upon Goodhall's election to terminate the lease pursuant to its terms. Unless and until Goodhall's exercised such option, the binding rights and obligations contained in the lease passed to David Caron Chrysler Motors, LLC.
There is no evidence in the record that Goodhall's exercised its option to void the lease upon the tenant's breach of the antiassignment provision. Neither party contends that Goodhall's followed the procedure to reenter the property pursuant to the lease's default provision. The only facts before us suggesting an intent to terminate the lease include: (1) a summary process action initiated by Goodhall's against Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, for nonpayment of rent; and (2) a stipulation entered into by David Caron Chrysler Motors, LLC, and Goodhall's. With respect to the summary process action, the trial court found that this action was settled by the transfer of a vehicle to Wallace Goodhall, Jr., and Lucille Goodhall. Thus, the summary process action did not terminate the lease.[13] With respect to the stipulation, the parties agree that the purpose of the stipulation was to establish that "the existing [l]ease between Goodhall's ... as [l]andlord, and David [Caron] Chrysler Motors, LLC, as [t]enant, be terminated by mutual agreement of the parties to said [l]ease [a]greement...." Even if this stipulation constituted an action by Goodhall's voiding the assignment and terminating the lease, the stipulation was entered into in June, 2000, after the plaintiffs' cause of action allegedly accrued.[14] Absent evidence of any action terminating the assignment prior to *174 the claimed cause of action,[15] Goodhall's failed to prove that it terminated the assignment, and, consequently, it remained subject to the rights and obligations set forth in the lease.
We therefore conclude that the trial court was incorrect in finding that, because Goodhall's did not consent to the assignment, there was no contract between David Caron Chrysler Motors, LLC, and Goodhall's. Because the trial court did not make any factual findings with respect to the plaintiffs' claim for breach of the lease, further proceedings to determine the rights and liabilities of the parties pursuant to the original lease are necessary.
The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for further proceedings according to law.
In this opinion the other justices concurred.
NOTES
[1] We granted certification to appeal limited to the following questions: (1) "Did the Appellate Court improperly fail to reach the question of whether the trial court erred in finding that there was no lease between David Caron Chrysler Motors, LLC, and Goodhall's, Inc.?"; and (2) "If yes, was the trial court's decision that there was no lease between David Caron Chrysler Motors, LLC, and Goodhall's, Inc., clearly erroneous?" David Caron Chrysler Motors, LLC v. Goodhall's, Inc., 298 Conn. 925, 925-26, 5 A.3d 486 (2010).
[2] The antiassignment provision stated in full: "Except as expressly otherwise provided in this [a]rticle, neither this [l]ease nor any part hereof, nor the interest of [the] [t]enant in any sublease or the rentals thereunder, shall, by operation of law or otherwise, be assigned, mortgaged, pledged, encumbered or otherwise transferred by [the] [t]enant, [the] [t]enant's legal representatives or successors in interest, and neither the [d]emised [p]remises nor any part thereof shall be encumbered in any manner by reason of any act or omission on the part of [the] [t]enant, or anyone claiming under or through [the] [t]enant, or shall be sublet or be used, occupied or utilized for desk space, mailing privileges, or any other purpose for or by any other principles or entities other than [the] [t]enant, without the prior written consent of [the] [l]andlord, which consent shall not be unreasonably withheld. If [the] [t]enant is other than an individual, a transfer in any single transaction or in a series of transactions of more than ... [49] percent ... in interest of [the] [t]enant (whether stock, [p]artnership interest or otherwise) by any party(ies) in interest shall be deemed an assignment of this [l]ease."
[3] In 1997, Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, was renamed JerryYost's Chrysler Motors, LLC, and JerryYost's Chrysler Motors, LLC, was later named David Caron Chrysler Motors, LLC.
[4] The lease provided that the tenant "shall not be responsible for any environmental condition, noncompliance with any environmental laws or any costs to remediate or cure the condition, problem or violation that existed prior to the commencement of [the] [l]ease." Additionally, the lease stated that the landlord "warrants and represents that the premises are fit for and habitable for occupancy and use" of the tenant.
[5] Judge Dupont dissented from the panel's decision to affirm the judgment of the trial court. David Caron Chrysler Motors, LLC v. Goodhall's, Inc., supra, 122 Conn.App. at 152, 997 A.2d 647. She would have found that the trial court determined that no contract existed between David Caron Chrysler Motors, LLC, and Goodhall's, and that this finding was clearly erroneous. Id., at 153, 997 A.2d 647. As a result, she would have reversed the judgment in favor of the defendants and remanded the case to the trial court. Id.
[6] Specifically, the trial court stated: "There were negotiations between the parties (Goodhall's, Inc., and David Caron/David Caron Chrysler Motors, LLC)...."
[7] The defendants point out that the only damages alleged in the plaintiffs' complaint and at trial were framed in terms of the losses suffered by Caron, individually. The question of the amount one can recover is distinct, however, from the question of one's right to recover on the basis of a breach of an enforceable lease.
[8] General Statutes § 34-121 stipulates that the articles of organization for a limited liability company must set forth, inter alia, the name of the company. Because General Statutes § 34-122(b) provides that a limited liability company's articles of organization "may be amended in any and as many respects as may be desired," Goodhall's Chrysler-Plymouth-Dodge-Jeep-Eagle, LLC, could freely amend the name set forth in its articles of organization to Jerry Yost's Chrysler Motors, LLC, and later to David Caron Chrysler Motors, LLC, without dissolving or otherwise changing the legal entity itself.
[9] The plaintiffs also claim that the assignment was valid because Goodhall's unreasonably withheld its consent, or, in the alternative, that it expressly waived any requirement of consent. Because we conclude that the assignment remained valid due to Goodhall's failure to take advantage of its right to invalidate the lease, we need not address these additional arguments.
[10] The plaintiffs point out that "[w]aiver does not have to be express, but may consist of acts or conduct from which waiver may be implied." (Emphasis added; internal quotation marks omitted.) Novella v. Hartford Accident & Indemnity Co., 163 Conn. 552, 562, 316 A.2d 394 (1972). The trial court made no findings as to whether the defendants' conduct constituted a waiver in the present case. Even if the defendants' mere failure either to accept or reject the assignment of the lease did not constitute a waiver, however, they were required as a matter of law under Rumbin to take affirmative action to terminate the lease or to void the transfer after the unauthorized assignment. As we have indicated, although this is a slightly different theory than the waiver theory that the plaintiffs argued to the trial court and on appeal, it is very closely related. Accordingly, we conclude that the defendants had fair notice of the plaintiffs' claim that the assignment did not automatically terminate the lease, and that deciding the case under Rumbin will not prejudice them in any way.
[11] We emphasize that Rumbin examined principles of contract law, and that the rules relating to assignments differ in other contexts. See, e.g., Dodd v. Middlesex Mutual Assurance Co., 242 Conn. 375, 382-84, 698 A.2d 859 (1997) (assignment of personal injury claim not permitted absent statutory authority); see also Stearns & Wheeler, LLC v. Kowalsky Bros., Inc., 289 Conn. 1, 9, 11, 955 A.2d 538 (2008) (characterizing Connecticut Unfair Trade Practices Act claim as neither tort nor contract claim, and prohibiting assignment thereof); Gurski v. Rosenblum & Filan, LLC, 276 Conn. 257, 259-60, 267, 885 A.2d 163 (2005) (characterizing legal malpractice claim as hybrid contract and tort action, and prohibiting assignment thereof to adversary in same litigation that gave rise to malpractice claim).
[12] In particular, the lease stated: "[I]f [the] [t]enant shall (i) do or permit anything to be done, whether by action or inaction contrary to any of [the] [t]enant's obligations hereunder, or (ii) default in the performance of any covenant or condition of this [l]ease ... [the] [l]andlord may (in addition to any and all rights at law or in equity) re-enter and remove all persons and [the] [t]enants [p]roperty and/or other property from the [d]emised [p]remises and such [t]enants [p]roperty and other property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of [the] [t]enant, all with service of notice and resort to legal process and without being deemed guilty of trespass, or becoming liable for any loss or damage which may be occasioned thereby." Additionally, the lease stated: "Should [the] [l]andlord elect to re-enter, as herein provided, or should he take possession pursuant to legal proceedings or pursuant to any notice provided for by law, [the] [l]andlord may terminate this [l]ease, and/or make such alterations and repairs as may be necessary in order to relet the [d]emised [p]remises.... No such re-entry or taking possession of [the] [d]emised [p]remises by the [l]andlord shall be construed as an election on its part to terminate this [l]ease unless a written notice of such intention be given to [the] [t]enant or unless the termination thereof be decreed by a court of competent jurisdiction. Notwithstanding any such reletting without termination, [the] [l]andlord may at any time thereafter elect to terminate this [l]ease for such previous breach." Thus, by the terms of the lease, the lease does not automatically terminate upon a tenant's breach of a covenant or default in an obligation.
[13] Caron testified that Goodhall's commenced a second summary process action for nonpayment of rent naming David Caron Chrysler Motors, LLC, as the tenant, and that this eviction proceeding was settled by the stipulation.
[14] In their complaint, the plaintiffs alleged that the environmental conditions existing on the property at the time the lease was originally entered into violated provisions in the lease regarding the landlord's responsibility for preexisting environmental conditions and the landlord's warranty of fitness and habitability.
[15] In fact, Goodhall's acceptance of rent after it was aware that Caron was occupying the premises weakens the claim that Goodhall's elected to terminate the lease.